IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SYED ASKARI,

    Plaintiff,

v.                                                                                     Civ. No. 25-220 GBW/KRS

MARIA G. LEGARRETA, *in her
individual capacity, Gadsden
Independent School District*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. *Doc. 35*. Having reviewed the briefing and all relevant law, the Court will GRANT the motion to dismiss.

**I.    BACKGROUND**

Plaintiff filed this action in the Third Judicial District Court on January 17, 2025, asserting various claims against Defendant relating to his alleged detention in Defendant's office and a negative performance review. *Doc. 2*. The case was removed to federal court on March 3, 2025. *Doc. 1*. On October 20, 2025, the Court granted Defendant's motion to dismiss[1] and gave Plaintiff 30 days to file an amended complaint.

---

[1] The Court did not dismiss Plaintiff's libel claims based on the September 27, 2024, and October 28, 2024, publications, or Plaintiff's false detention claim based on the events of October 28, 2024, because Defendant specifically did not request their dismissal. *See doc. 32* at 12. These remaining claims from the First Amended Complaint were superseded by the filing of the Second Amended Complaint. *See doc. 33*.

*Doc. 32*.  Plaintiff timely filed his Second Amended Complaint on November 18, 2025.  *Doc. 33*.  Defendant again moves for dismissal.  *Doc. 35*.

The Second Amended Complaint alleges the following facts.  At the time of relevant events, Plaintiff was a mathematics teacher at Gadsden High School and had been teaching for thirteen years.  *Doc. 33* at 3, 9, 10.  Defendant was the school principal.  *Id*. at 3.  On September 27, 2024, and October 28, 2024, Defendant issued publications ordering Plaintiff to "collaborate with colleagues" and using the words "failure in collaboration with colleagues."  *Id*. at 2.  Defendant signed the statements.  *Id*. at 3.  Plaintiff also signed the statements, but alleges he did so "under coercion" and without his consent.  *Id*. at 4.

On October 28, 2024, when Plaintiff signed a "fabricated performance plan" in Defendant's office, Defendant threatened discipline and/or termination if Plaintiff refused to sign.  *Id*. at 8.  Plaintiff requested repeatedly to leave but Defendant kept the door closed and would not let him leave the room until he signed the document.  *Id*.  Plaintiff remained in Defendant's office for 100 minutes.  *Id*. at 7.

In January 2025, Plaintiff filed three grievances against Defendant, but the school district did not take any action against Defendant.  *Id*. at 6.

On January 30, 2025, at about 7:45 a.m., when Plaintiff arrived at his classroom, Defendant was waiting in the empty room with the door closed, lights off, and a brown envelope in her hands.  *Id.* at 4.  Her purpose was to secure Plaintiff's signature on the

2

documents in the envelope. *Id*. Plaintiff became extremely frightened and suffered a panic attack. *Id*. at 5. He could not speak due to sudden shock, and walked to the library room to take refuge. *Id*. Defendant "chased" Plaintiff into the library room. *Id*. Plaintiff cried, "[D]o not take me to the principal's office; she keeps me for long hours." *Id*. Everything went black and Plaintiff could not remember anything until he heard a nurse telling him he was in the hospital. *Id*. Plaintiff is now afraid of crowds, certain places, and principals and vice principals, and has been living at home with post-traumatic stress disorder. *Id*. As a result of his injury on January 30, Plaintiff could not teach during the 2025–2026 school year and stayed at home taking medication. *Id*. at 9.

## II. LEGAL STANDARD

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City*

*& Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  The court need not accept the truth of any legal conclusions.  *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS

The Second Amended Complaint alleges claims of: (1) defamation, (2) fraudulent inducement, (3) intentional infliction of emotional distress, (4) breach of duty/gross negligence, (5) false imprisonment, (6) cruel and unusual punishment, and (7) quantum meruit.  *See doc. 33*.

#### A.   NMTCA Notice Requirement

The New Mexico Tort Claims Act (NMTCA) grants immunity from suit for torts by "public employee[s] . . . acting within the scope of duty," except as waived by §§ 41-4-5 through 41-4-12.  NMSA § 41-4-4(A).  These exceptions to the "general rule of immunity are strictly construed."  *Sanders v. N.M. Corr. Dep't*, 562 P.3d 572, 578 (N.M. 2024) (quotation omitted).  A public employee acts within the scope of duty when "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  NMSA § 41-4-3(G).  "[A] public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally malicious, or even criminal."  *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005) (emphasis in original).  Public school employees are "public employees" for purposes of the NMTCA.  *See, e.g.*, *Henning v. Rounds*, 171 P.3d 317, 322 (N.M. Ct. App. 2007).

4

The NMTCA requires claimants to provide written notice of "the time, place and circumstances of the loss or injury" to the head of the public body being sued within ninety days of the occurrence giving rise to the claims. NMSA § 41-4-16(A). The NMTCA provides that "[n]o suit or action . . . shall be maintained and no court shall have jurisdiction" unless the required notice was given, or unless the governmental entity had "actual notice" of the occurrence. *Id*. § 41-4-16(B). The purpose of this requirement is "(1) to enable the person or entity to whom notice must be given . . . to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider whether to pay the claim or to refuse it." *Martens v. City of Albuquerque*, 531 P.3d 607, 609 (N.M. Ct. App. 2023) (citation and quotation omitted). Therefore, the requisite notice "is not simply actual notice of the occurrence of the accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue." *Herald v. Bd. of Regents of the Univ. of N.M.*, 357 P.3d 438, 449 (N.M. Ct. App. 2015) (quoting *Dutton v. McKinley County Bd. of Comm'rs*, 822 P.2d 1134, 1136 (N.M. Ct. App. 1991)). Under the NMTCA, "defendants have the burden of proving that the notice requirement was not met." *Gallegos v. Bernalillo Cnty. Bd. of Cty. Comm'rs*, 278 F. Supp. 3d 1245, 1269 (D.N.M. 2017) (quoting *Dutton v. McKinley Cnty. Bd. of Comm'rs*, 822 P.2d 1134, 1135 (N.M. Ct. App. 1991)).

Based on the allegations of the Second Amended Complaint, it is clear that Defendant was acting within the scope of duty as Gadsden High School's principal

5

during relevant events.[2]  Therefore, Plaintiff was required to provide written notice of his claims within 90 days of September 27, 2024, October 28, 2024, and January 30, 2025, respectively.  The Second Amended Complaint is silent with respect to the required notice.  *See generally doc. 33*.  However, as the Court noted in its previous order, Plaintiff filed a "Tort Notice of Claims" on the docket on March 20, 2025, purporting to give the Superintendent of the Gadsden Independent School District notice of claims based on the events of January 30, 2025.  *Doc. 7*.  In addition, Plaintiff filed his first Amended Civil Complaint on March 24, 2025, within 90 days of January 30, 2025.  *Doc. 8*.

Defendant does not contest the sufficiency of the notice provided for claims arising on January 30, 2025.  *See doc. 35* at 4–5.  However, Defendant argues that claims arising on September 27, 2024, and October 28, 2024, should be dismissed for failure to comply with the notice requirement.  *Id*.  Defendant attaches a summons showing that the first complaint was not served until January 31, 2025, meaning that the complaint itself could not serve as "actual notice" of the claims.  *Doc. 35-1*; *c.f Griego v. N.M. State Police*, Civ. No. 9-599 BB/ACT, 2009 U.S. Dist. LEXIS 154591, at *10 (D.N.M. Feb. 23, 2010) ("The purposes of the TCA's notice provision are satisfied where, as here, a lawsuit is filed *and the complaint is served* within ninety days of the occurrence in question." (emphasis added)).

---

[2] Plaintiff agrees with this characterization.  His unauthorized sur-reply asserts that Defendant acted "within the scope of her official duties" and "within the course and scope of her employment." *Doc. 42* at 3, 4.

6

In response, Plaintiff argues that the grievances he filed on January 8, 2025, January 22, 2025, and January 29, 2025, were "akin to written notice" of the claims. *Doc. 37* at 7. The grievances are attached to the response brief.[3] *Doc. 37* at 19–21. None specifically mention the dates in question (September 27, 2024, and October 28, 2024), nor do they relate to the events on which the instant claims are based. *See id*. The first grievance relates to unannounced classroom observations by administrators, the second expresses disagreement with a Human Resources response dated January 17, 2025, and the third requests an "unbiased and bilateral FMCS Arbitrator/Mediator" as soon as possible.[4] *Id*. These grievances fail to satisfy the NMTCA's notice requirement for Plaintiff's claims for defamation and fraudulent inducement which rest on the events in 2024. Thus, those claims must be dismissed on that basis.[5]

---

[3] The Court considers the grievances without converting the motion into one for summary judgment. The Tenth Circuit has held that "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citations omitted). The grievances are referenced in the Second Amended Complaint and are central to fourth cause of action, *see doc. 33* at 6, and neither party disputes their authenticity.

[4] The grievance dated January 8, 2025, also states that "[t]he Professional Performance Growth Plan is completed on December 20, 2024, with exceeding the requirements of the Plan by the Teach of Record Syed Askari in good faith for the School-Year: 2024–2025." *Doc. 37* at 19. This bare mention of the performance plan did not confer notice of likely tort claims against Defendant.

[5] The Court finds in the alternative that the Second Amended Complaint fails to state a claim for either cause of action. First, Plaintiff has identified no waiver of immunity for claims of defamation or fraudulent inducement under the NMTCA. Second, the operative complaint does not allege facts showing publication by Defendant to a third party, *see Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1236 (N.M. 1989), or Plaintiff's reliance on a misrepresentation of material fact, *see Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999) (citing *Lotspeich v. Golden Oil Co.*, 961 P.2d 790, 792 (N.M. Ct. App. 1998)). The Court finds these are all independently sufficient reasons to dismiss Plaintiff's claims for defamation and fraudulent inducement.

B.  <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges a claim of intentional infliction of emotional distress (IIED) based on the events of January 30, 2025.  *Doc. 33* at 4.  To establish a claim of IIED in New Mexico, the plaintiff must show that:

> (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.

*Baldonado v. El Paso Nat. Gas. Co.*, 176 P.3d 286, 294 (N.M. Ct. App. 2006) (quoting *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001)).  On the first element, the plaintiff must demonstrate conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Trujillo*, 41 P.3d at 342 (quoting Restatement (Second) of Torts § 46 cmt. d).  Employment actions do not generally satisfy this standard.  *See, e.g., id.* at 343 ("Being fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'").

The Court finds Plaintiff has failed to state a claim for IIED.  Under the facts alleged—that Defendant waited for Plaintiff in a classroom before work, held a brown envelope, attempted to secure his signature on employment-related documents, and followed him to the library—the required element of "extreme and outrageous"

8

conduct simply cannot be satisfied. *See Baldonado*, 176 P.3d at 294. No fact alleged demonstrates that Defendant's conduct was "beyond all possible bounds of decency," *see Trujillo*, 41 P.3d at 343; on the contrary, it appears Defendant was fulfilling a fairly ordinary employment-related duty of securing Plaintiff's signature on documents he was required to sign. Therefore, regardless of Plaintiff's level of subjective distress, no relief can be granted.

### C. Breach of Duty

Plaintiff asserts a claim of "Breach of Duty in a Grossly Negligent Manner." *Doc. 33* at 6–7. For this claim, Plaintiff alleges that "Defendant [principal] had a legal duty to protect the plaintiff … from harm [and that Defendant breached that duty by] commit[ing] 'ambush or simple assault' with negligent or actual malice." *Id*. at 6. The "ambush or simple assault" identified is the same event which underpins the IIED claim. The facts alleged do not establish any assault or ambush which breached a duty. Thus, this claim is not cognizable and must be dismissed.

The Court also notes that, in this claim, Plaintiff references the school district's failure to investigate or act on the three grievances he filed in January 2025. *Id*. at 6–7. He states the school district was "deliberately indifferent" to his grievances against Defendant, thereby leaving him "more vulnerable" to Defendant's subsequent conduct. *Id*. at 7. However, as Defendant notes, *see doc. 35* at 10, the school district is not a

9

defendant in this suit.[6]  Defendant is sued in her individual capacity, and there is no allegation that *Defendant*—as distinct from the school district—breached a duty with respect to processing Plaintiff's grievances.  As such, Plaintiff fails to state a claim based on inaction on the grievances.

### D. False Imprisonment

Plaintiff alleges a claim of false imprisonment based on his presence in Defendant's office for 100 minutes on October 28, 2024.  *Doc. 33* at 7–8.  To the extent this is a state tort claim under the NMTCA, it fails for lack of notice as described above.  However, Plaintiff also alleges that Defendant's conduct "was constitutionally impermissible under 42 U.S.C. § 1983" and violated his "Fifth[7] and Fourteenth Amendment right . . . to be free from bodily confinement."  *Id*. at 8.  Section 1983 claims are not subject to the NMTCA's notice requirement and the Court therefore considers them separately.

---

[6] On this point, the Court recognizes that "Gadsen Independent School District" is listed in the caption of the operative complaint.  *Doc. 33* at 1.  While this inclusion could support the argument that the School District is a separate defendant, all other relevant indicators demonstrate conclusively, that it is not.  First, in the caption, the principal's name is capitalized while the school district's name is not.  *Id*.  Second, in the caption, Plaintiff indicates that there is only one "DEFENDANT" rather than "DEFENDANTS."  *Id*.  Third, and relatedly, throughout the complaint, Plaintiff always uses the term "Defendant" in the singular.  *See generally id*.  Lastly, and most importantly, throughout the complaint, Plaintiff exclusively uses the term "Defendant" to refer to Principal Legarreta.  Even when describing the actions or inactions of the School District, it is never described as "Defendant."  *Id*.

[7] Although Plaintiff cites the Fifth Amendment, claims of false imprisonment under § 1983 are generally grounded in the Fourth Amendment, as explained below.  *See, e.g.*, *Harvey v. Corneal*, 2025 U.S. Dist. LEXIS 156997, at *11 (S.D.N.Y. Aug. 1, 2025) ("The constitutional analog to false arrest and false imprisonment is the Fourth Amendment, not the Fifth Amendment . . . ." (quotation omitted)).

Under § 1983, a plaintiff may sue any person who, under color of state law, subjects him to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff who "has been imprisoned without legal process . . . has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "These torts are only analogies because § 1983 suits ultimately rest on the Constitution, not on state (or federal) common law," but they "guide us in applying rules for the accrual of a cause of action." *Id*. (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–88 (10th Cir. 2004)); *see also McGarry v. Bd. of Cty. Comm'rs*, 294 F. Supp. 3d 1170, 1195 (D.N.M. 2018) (using New Mexico law as a "starting point" to determine the contours of a § 1983 false imprisonment claim).

Under New Mexico law, false imprisonment "consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." *Romero v. Sanchez*, 895 P.2d 212, 215 (N.M. 1995) (quoting NMSA § 30-4-3). Similarly, the general common law tort of false imprisonment encompasses "[e]very confinement of the person," including by "forcibly detaining" them. *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007). The Second Amended Complaint does not allege that Defendant confined or restrained Plaintiff, only that the door was closed. There is no allegation that Plaintiff was a minor during relevant events or that he suffered from physical or mental disabilities rendering him unable to open a closed

11

door. The fact that Defendant informed Plaintiff there would be employment consequences if he did not sign the documents, *see doc. 33* at 8, does not elevate the encounter to the level of false imprisonment. *C.f. Diaz v. Lockheed Elecs.*, 618 P.2d 372, 373 (N.M. Ct. App. 1980) (denying summary judgment on false imprisonment claim where plaintiffs were kept in a van for over two hours with an armed security guard and the door handle was removed). The sixth cause of action is therefore dismissed for failure to state a claim.

### E. Cruel and Unusual Punishment

Plaintiff alleges a claim of cruel and unusual punishment based on the same facts as the claim of false imprisonment. *Doc. 33* at 9. Plaintiff does not specify whether his claim arises under the Eight Amendment or the Fourteenth Amendment. The Eight Amendment guarantees the rights of convicted prisoners to "humane conditions of confinement." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). The Fourteenth Amendment protects the same rights as applied to pretrial detainees. *Hardy v. Rabie*, 147 F.4th 1156, 1163 n.3 (10th Cir. 2025) (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)). Plaintiff does not allege that he was convicted, arrested, or detained. Indeed, as explained above, he does not allege that he was confined or restrained in any meaningful sense. The claim must therefore be dismissed.

F.  Quantum Meruit

Finally, Plaintiff asserts a claim of quantum meruit.  He alleges that the school board "had reasonable notice that the plaintiff expected salary compensation for [his] teaching services," but that "[d]ue to work related injury or illness on January 30, 2025, the plaintiff could not teach for the school-year 2025–2026 and as a result lost wages, income or yearly-salary [sic]."  *Doc. 33* at 10.

To prevail on a claim of quantum meruit or unjust enrichment under New Mexico law, a party must show that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust."  *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000). Recovery in quantum meruit is based not on the parties' prior agreement, but on the reasonable value of services actually rendered.  *Calderon v. Navarette*, 800 P.2d 1058, 1059 (N.M. 1990).  Under the facts alleged, no services were rendered during the 2025–2026 school year because Plaintiff was unable to teach.  There is accordingly no plausible claim for relief on a theory of quantum meruit.

IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (*doc. 35*) is GRANTED and all claims are hereby DISMISSED. Because the Court finds that further amendment would be futile, the Second Amended Complaint (*doc. 33*) and all claims alleged therein are DISMISSED WITH PREJUDICE.

*See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citation omitted) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

Defendant's Motion to Strike Sur-Reply Filed Without Leave of Court (*doc. 43*) and Defendant's Motion to Strike Second Sur-Reply Filed Without Leave of Court (*doc. 46*) are DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**